The next case on today's docket is the case of People v. Chad B. Hayes And we have, did I get that right? Yes. Who is the appellant? Is David? No. I guess you guys signed it. I signed it as well. Oh, okay. Sorry. My mistake. That's okay. Okay, Justice Lassie, it doesn't take you look like a David for the appellant. And David Mannington for the appellate. And you may begin the class. Lassie or Lacey? Lassie. May I please the court, counsel? My name is Jennifer Lassie with the Office of the State Appellate Defender, and I represent the descendant appellant, Mr. Chad Hayes. Because the first argument in this case, that is whether the trial court erred in denying Mr. Hayes' motion to suppress the July 25th test results is dispositive, I would like to address that argument in depth first. The July 25th test results used to convict Mr. Hayes were illegally obtained in violation of his Fourth Amendment right to be free from unreasonable searches and seizures. In this case, Mr. Hayes was driving his van with his children in the backseat down East South Street. Eyewitnesses Pamela Klim and Susan Foster, who live on East South Street, were talking to one another on the phone at the time. Pamela Klim observed that there was nothing inappropriate about Mr. Hayes' driving. Susan Foster saw the child on a bicycle, and when he turned in between two parked vehicles, she lost sight of him. Both Pamela Klim and Susan Foster noted the parked vehicles on the side of the street from where the child emerged. Once Susan Foster lost sight of him, she heard Pamela Klim exclaim over the phone that he had been hit by Mr. Hayes' van. Pamela Klim saw that the child in between the two vehicles did not move either direction before pulling out into the path of Mr. Hayes' van. He emerged on the passenger side and only made it as far as the passenger side front tire before being struck. Deputy Ash arrived on the scene, and without having Mr. Hayes submit to any filled sobriety testing, he sent him for blood and urine testing at the local hospital. Now, the Fourth Amendment prohibits unreasonable searches and seizures, and generally requires a warrant based on probable cause before a search may occur. Now, Deputy Ash could have gotten this test legally by a few methods, by statute, by consent, by a warrant. Now, the statute that Deputy Ash could have utilized, and this is the statute which the test results actually were admitted under, is Section 501.2c2 of the Illinois Vehicle Code. Now, this statute permitted non-consensual, warrantless blood and urine testing if a person has been arrested and if there is probable cause to believe that he has driven a vehicle under the influence of drugs or alcohol and caused an accident that results in injury or death. Now, this statute should not have applied to Mr. Hayes as a basis to let these results in. Mr. Hayes was not under arrest at the time he was sent for this blood and urine testing. Trooper Thoman, Deputy Ash, and Chief Murray all testified that they did not arrest him prior to the test. Deputy Ash testified that he arrested Mr. Hayes based on the results of the drug test. And, in fact, Deputy Ash had to call Mr. Hayes to come to the jail to be arrested after the drug testing occurred because Mr. Hayes had left to go to a counseling session with his mother after the statute. Next, no tickets were issued prior to the blood and urine testing that occurred in this case. Though Deputy Ash repeatedly claimed on the witness stand, the tickets have been completed, I just need to hand them to Mr. Hayes, when confronted with the two tickets that were issued in this case, which are attached as an appendix to the opening brief, Deputy Ash admitted on the stand that the only tickets he issued were those that he issued two days after the accident and two days after the blood and urine testing occurred in this case. So, no arrests, no tickets before the blood and urine testing. And even so, the trial court used this statute focusing solely on the probable cause requirement. And the trial court's struggle to find probable cause in this case was clearly against the manifest way to the evidence where the trial court used the results of the drug test to justify the drug test itself. Now, basic constitutional law prohibits using the results of a search to justify search. You must have independent probable cause. And there was no probable cause here. There were no signs that Mr. Hayes was under the influence. An eyewitness said there was nothing inappropriate about his driving. A trooper said there was no indication he was speeding. Mr. Hayes didn't have bloodshot eyes, slurred speech, lethargic movements. There were no admissions related to drug or alcohol use. No drugs or drug paraphernalia. And most importantly, at the suppression hearing, Deputy Ash never claimed that he thought Mr. Hayes was under the influence. Instead, he said that Mr. Hayes' consent was implied under the Illinois Vehicle Code. Now, the trial court's erroneous ruling denying the suppression of the test results was based on its finding that there was probable cause. And the opening brief was largely devoted to arguing the obvious lack of probable cause in this case. The State's brief makes no argument in support of probable cause and instead asks this Court to affirm on another basis. This should be taken as a concession by the State. There was no other admissible basis to admit these test results. And because of this, because there was no probable cause in this case, the trial court's ruling was erroneous. Next, Deputy Ash could have tried to get a warrant if he wanted to get this blood and urine testing done, but he didn't. Next, Deputy Ash could have tried to get, he could have gotten Mr. Hayes' consent for the testing, perhaps, but he didn't. And it was the State's burden at the trial court level to prove consent by a preponderance of the evidence. And the State failed to do so. The trial court found that the State failed to prove that Mr. Hayes did anything more than merely acquiesce to the search. And when asked by the State to reconsider that ruling, the trial court again said no, there was no consent in this case. The State could not now establish that the trial court's finding and ruling as to consent was manifestly erroneous. Next, as to the extent that the State asked this court to remand for a hearing on an accident, as to whether there were accident circumstances in this case that might justify Ash's failure to get a warrant, this is a waste of judicial resources and a red herring. Exigent circumstances are when you're concerned that evidence might be destroyed and there's no time to get a warrant. In Missouri v. McNeely, which the State has conceded applies to this case, the United States Supreme Court held that the natural dissipation of alcohol from the bloodstream is not in itself an exigent circumstance. Likewise, the natural dissipation of drugs from the body cannot be an exigent circumstance. Additionally, there's no need for another hearing. Ash testified not that he didn't get a warrant because of any exigent circumstances, but because he thought consent was implied under the Elementary Vehicle Code. And even if we were to say there was some sort of exigent circumstance here, which there is not, even then that would not say the illegal drug testing in this case. An officer still must have probable cause to believe that a driver is under the influence of drugs or alcohol, and only that coupled with exigent circumstances might excuse an officer's failure to obtain a warrant. Because there was no probable cause here, an exigent circumstance cannot save the illegal blood and urine testing in this case. Because Mr. Hayes was not arrested, he was not ticketed, because he did not consent, because there was no warrant, and because there was no probable cause, the July 25th test results should have been suppressed. And the trial court's ruling denying that motion was an error. Because of this, Mr. Hayes would ask this court to remand for a new trial with those results suppressed. And unless your honors have questions, I would like to address the reasonable doubt argument. Go right ahead. Next. The State did not prove Mr. Hayes guilty of aggravated DUI beyond a reasonable doubt because it failed to present any evidence that his driving was a proximate cause of the accident in this case. No rational trier of fact could find the elements of the offense were proven where it was established that the accident was unavoidable. Now, a driver commits misdemeanor DUI by driving with any amount of drugs in his system. To prove aggravated DUI, the State must prove that his driving was a proximate cause of the injury or death. Now, proximate cause must mean something more than just being behind the wheel of the vehicle. Otherwise, there is no difference between misdemeanor DUI and felony DUI. And yet the State's argument seems to be that Mr. Hayes' presence behind the wheel is sufficient to convict of aggravated DUI. The Supreme Court in People v. Martin made clear that proximate cause is going to be the central issue at trial in an aggravated DUI case. And proximate cause means the State must prove both cause in fact and legal cause. Cause in fact means that but for the defendant's bad conduct, the injury or death would not have occurred. This means there must be a reasonable certainty that the defendant's acts caused the injury. Legal cause is a question of foreseeability. And essentially the question is whether this type of injury was one that a reasonable person would expect as a likely result of his conduct. In every aggravated DUI case, it's the defendant's driving that is the proximate cause. In People v. Johnson, Johnson sped through a yellow light and collided with another driver. Witnesses said Johnson was speeding. He could have slowed down or stopped. His driving was proximate cause. In Martin, Martin crossed the center line and struck an oncoming car. His erratic driving was proximate cause. People v. Merritt, Merritt was speeding when she hit a jogger wearing headphones. Other drivers saw the jogger and it looked like he was about to enter the roadway. And Merritt even saw the jogger. Other drivers said that they would have slowed down. This was proximate cause. In this case, there is no evidence of proximate cause. Foster and Klim both said vehicles lined the side of the street where the 7-year-old child emerged. Foster lost sight of him when he pulled off the sidewalk and in between two vehicles. This means that no one could see that child when he's in between these two cars. Once she lost sight of him, she heard Pamela and Klim explain he had been hit by Mr. Hayes' van. This shows that it happened almost instantaneously. Klim saw that the child didn't look either direction before pulling out from in between the two vehicles. He came out on the passenger side of the van and only made it as far as the passenger's side front tire before being struck. Klim said the accident was unavoidable. She signed an affidavit saying there was nothing the defendant could have done to avoid this collision. Now, unlike the other aggravated DUI cases like Merritt or Johnson, he could not have stopped. He could not have slowed down. Now, the state relies on Trooper Thoman's report to argue that Mr. Hayes glancing back at his children inside the vehicle was a cause of the accident. In Trooper Thoman's report, he noted that the child's failure to yield the right of way was the cause of the accident, and he listed Mr. Hayes glancing back at his children as a second cause. Now, what that means we don't know as far as that report. We cannot assume that Trooper Thoman's report in referring to cause is the same as the legal terms of art that we use when referring to proximate cause. Most importantly, in the stipulation signed by the state, Trooper Thoman's testimony as a state witness would be, and I quote, based on his investigation, which included, among other things, interviewing one eyewitness being Pamela Klim, interviewing the defendant, inspecting the vehicle driven by the defendant, taking measurements of the point of impact to the point where the vehicle came to rest was 46 feet, and discussing the accident with Deputy Esch, Trooper Thoman would testify that, in his opinion, the accident was unavoidable and there was no reason to issue any traffic citation to the defendant. And this is Trooper Thoman as a state witness in the stipulation for the stipulated bench trial. Now, at the trial court, the state asked the court, quite literally, to presume that Mr. Hayes, that had Mr. Hayes not had drugs in his system, that he would have exercised caution. The state relied on presumptions when it was required to prove, beyond a reasonable doubt, that it was, in fact, his driving that caused the accident. And the state is now asking this court to presume the same thing, that he could have avoided the accident, even though this is directly contradicted by the evidence, where both an eyewitness determined that the accident was unavoidable and where a state trooper, after his investigation, concluded that the accident was unavoidable and that he would not even ticket Mr. Hayes. Next, the state's reliance on People v. Swift is misplaced where the state uses that case to argue that distracted driving could cause an accident. In People v. Swift, a driver pulled his pickup truck with a trailer attached over onto the side of the road and he saw Driver Swift approaching. It looked like he was speeding. So, the driver activated his emergency flashing lights. Swift was either glancing out at a cornfield or he also testified that he had been reaching down into the floorboard to pick up things that had fallen from the passenger seat. He struck that driver's pickup truck and that driver. Now, a stationary pickup truck with a trailer attached with flashing lights parked at the top of a hill on the side of the road is entirely distinct from a small child emerging unexpectedly from in between two vehicles. In this case, in Swift, it was the driver who said possibly a potentially self-serving statement that he could not avoid the accident. In this case, we have an impartial eyewitness who said that Mr. Hayes could not avoid the accident. I think if we use an example, if this were a driver on a moped pulling out from in between two vehicles, if we have eyewitnesses telling us that the driver on the moped isn't visible when he's in between those two vehicles, he pulls out in front of Mr. Hayes' van, we have eyewitness testimony saying there was nothing he could do to avoid the accident, a trooper's determination that the accident was unavoidable. I think, no, no rational juror could be reasonably certain that Mr. Hayes' driving caused the accident under those circumstances. And I think the only thing that makes this different is that this was a small child. And we all wish Mr. Hayes could have taken evasive action, but the facts and the evidence are clear, and he could not. The state is asking you to presume that he could take evasive action, even though the evidence and the facts of this case are clear. Even the most attentive driver could not have avoided this collision. That a parent glances back at his children in the back seat is no different than a driver glancing at his side view or rear view mirror to check for traffic. The most attentive driver could not have avoided this, and the state failed to present any evidence that it was Mr. Hayes' driving that caused this accident. And because of this, no rational trier of fact could convict him of aggravated DUI. Unless your honors have any questions, I'll give the floor. I think so. If your honors find that the first issue, the lack of probable cause, is dispositive, then Mr. Hayes would request that you remand for a new trial with those test results suppressed. However, if your honors find that both there was a lack of probable cause and that the state failed to prove this charge beyond a reasonable doubt, Mr. Hayes would ask that you vacate this conviction. Thank you, Ms. Blasio. I have the opportunity to rebut. Mr. Manachin. May it please the court, counsel. My name is David Manachin. I'm with the Appellate Prosecutor's Office in Springfield. The case was transferred out of there because of the case law in the 5th District. In this case, this court can affirm the trial court's decision regarding the motions suppressed on any basis on the record. The trial court, I think, looked at the wrong statutes. There are two implied consent statutes regarding blood tests. One is the usual one for DUI and one is under 501.6 where there is a fatal crash where people have given implied consent to give blood tests. In this case, we have both actual and implied consent under 501.6 to allow the test results to be admitted. The testimony at this present hearing was that the defendant was simply asked to go to the hospital for blood tests anyway. That is clear consent. There is no evidence that he was told that he had to take the test. There is no evidence that the officer's belief that he could force the defendant to take the test was ever communicated to the defendant in any way. It simply asked to take the test and agreed to take it. And so what statute are you referencing now? As far as the implied consent, it is set up, I have it cited in my brief on 501.6. Okay. It's 625.5-11-501.6. Any person who drives with extra control of a vehicle who has been involved in a personal injury or fatal warrant accident shall be deemed against consent. If arrested. Yeah, if arrested. Uh-huh. Well, there wasn't an arrest here. While all the officers tried to make it look like it was not an arrest, the trial court found that it was an arrest. The test for whether a person is under arrest is whether a reasonable person in the position of the defendant would believe that they were under arrest. We have the defendant who is at the scene of a fatal car accident who is required to remain at the scene by statute, who is surrounded by a number of officers, who is asked to go to the hospital to take a blood test, who now claims that he was coerced or forced to take a blood test, who is driven to the hospital in a police car. The police officer stays with the defendant at all times in the hospital. He is not released at the end of this. He's taken by a second squad car to the police station. So you're saying that it wasn't consensual? Well, I'm saying that it was consensual, but that it was also consensual on the implied consent. So why is it that they did a blood test two days later? Well, I don't know why. I guess what it was was the state's attorney was looking at the wrong statute, or I should say the special prosecutor in this case looked at the wrong statute as far as which, whether or if, or just had doubts as to the validity of the blood test who was going to cover all bases. What about 501.6c? I guess there's supposed to also be a warning if they're requesting a test. The case law says that that warning provision does not apply at a criminal trial. It only applies in terms of the admissibility of the test results. There are no cases under the 501.6 regarding the warning of the like. I'm sorry, there's no requirement under 501.6? There is a requirement for warnings. But the case law is that the warnings do not determine the admissibility of the test results at a criminal trial. That just the normal standards for admissibility of adders apply. That the standards regarding the warning of the like only apply in an attempt to take the defendant's license away. So you're saying that it only goes to suspension? It only goes to suspension. So we don't need to worry about any warning beforehand, and we also don't need to worry about any arrest beforehand. So that means basically that anybody can be taken to a hospital or whatever and have an... Well, I'm saying that there was an arrest in this case. Well, what about where it says, if arrested as evidenced by the issuance of a uniformed traffic ticket? What do you make of that? The case law says that the ticket does not have to be contemporaneous with the request. That the as evidenced by is simply a ticket being one means of showing that there is an arrest. So in other words, the fact that you have the right to do this has nothing to do as arrest being a condition of that right? No, what I'm saying... In other words, it doesn't have to... I'm just saying that to have an arrest under this statute, you do not have to have the ticket. Under the 11051.2 cases, like People v. Gamblin, Brantley, and Wozniak, in all those cases, the defendant was gave the blood test, and then the ticket was issued afterwards, and the courts there said, no, that is all right. Let me ask you though, in every other case that I read, there was some indication of some probable cause that there was some impairment involved. If you take your reading of this statute and the case law, you're saying every single person that's involved in a fatal accident can be taken and arrested, and taken to the hospital, and forced to have a test, correct? Every person. Because apparently this man had no indication of an impairment by every single witness, and all the officers, correct? Correct. Okay. The 11501.6 does not require probable cause or proof of intoxication or suspicion of intoxication. The only thing it requires is that there is an accident involving fatality. The statute clearly does not require probable cause to believe the defendant is intoxicated. That is entirely separate from the DUI statute, the implied consent under the DUI statute, 11501.2. And so in your reading of the statute and the case law, there is no conditional requirement that there be consideration for or an arrest prior to? I'm saying, yes, there has to be an arrest, but I'm saying that under the facts of this case, there was an arrest. Okay. If there's an arrest, on what basis was there an arrest? There was no probable cause to arrest him. He basically just told me that. Now, the question of whether there is an arrest is would a reasonable person in the defendant's position believe that they were free to leave? That's the standard for determining arrest for purposes of was the defendant under arrest when asked in this particular circumstance. So, and what was the purpose of the arrest by the officers? Righteous driving, failure to pay attention. I forget what the tickets were issued. But there is, in fact, an arrest when you have a situation where the defendant cannot leave the scene. He's asked to go to the hospital. A police officer is with him at all times. So, but aren't you really telling me that any time there is a fatality or a personal injury, you don't have to have any other indication of a violation? You can determine that after the fact. You can just take them to the hospital, have them drug tested or whatever, and say that they're under arrest because a reasonable person would think that they were under arrest. Under the implied consent statute, under this 501.6, you have agreed to go, if you're involved in a fatal accident, you agreed to blood testing. If arrested. If arrested, and there was an arrest. The question is, the question then becomes, do you have to have a valid arrest or did the officer have to state the correct... No, he can decide that after the fact, after he's taken the drug test. No, but I'm just saying that under the facts of this case, that there was an arrest. Whether or not there was problem of cause for arrest is a separate question. The question is, was there an arrest at the time the defendant was asked to do the tests? He was asked and he agreed to take them. All right. With respect to the reasonable doubt argument, we are not saying that the defendant should be presumed to have been the cause of the accident because he had the drugs in his system. We're saying that the trial court's determination of guilt was proper based upon the evidence that there were two causes for the arrest. The defendant's lack of attention and the child's negligence. The trial court was not required to believe or accept the opinions of the witnesses that there was no opportunity to avoid the accident. The accident was unavoidable in the sense that the defendant wasn't paying attention and couldn't see the child and couldn't take evasive action because he didn't even know the child was there because he was not paying attention. And that is what we're relying upon as the cause with respect to the proof beyond the reasonable doubt. Yes, this case is different from many of the usual reckless homicide or... It's totally different. It's totally different because in every other case I read, there was some indication that there was impairment that had to do with drugs or alcohol. That's correct, but there is no requirement that you have to have the defendant driving all over the road. You have here the defendant who is not paying attention. That is the trial court could reasonably determine that that was in fact a cause of the accident. It does not require that the defendant be the sole cause or the sole probable cause of the accident. We have the defendant who's not paying attention to what he's doing or what he's supposed to be doing. And it's at that moment that he hits the child. It's a combination of his own lack of attention and the child's lack of attention that resulted in this crash. So there's no basis to substitute this court's judgment for that of the trial court regarding the question of reasonable doubt. If there are no further questions, I will stand by briefly with respect to the other issues raised. Thank you. Your Honors, Mr. Hayes is before this court just as he was with the trial court with the facts and the law on his side. Now, while the state claims that there was nothing in the record to indicate that Ash portrayed to Mr. Hayes that he had to go for this blood and urine testing or that there was a lack of consent, that's directly contradicted by the record. Page T82, Defense Counsel. On what basis did you have Mr. Hayes transported to the Lawrence County Hospital for testing? Ash. He was involved in a personal injury accident. He was a driver of a vehicle involved in a personal injury accident. Okay. So, but what I gather from Mr. Manchin's argument is it doesn't matter really what the facts were in this case. That his reading of the statute of 501.6 is you have an accident and there's any personal injury or death involved. You can go and draw blood and you don't have to, they're arrested then. They're arrested, under arrest, they're taken to the hospital. There doesn't have to be any tickets issued and they don't have to have a warning or a receipt of a warning. Yes, Your Honor. That seems to be the state's interpretation of the statute. However, it cannot be based on the statute itself. So, 501.2C2 required probable cause and the state, I believe, just conceded that probable cause does not exist here. Next, the state has argued that this 501.6 saves the illegal drug testing in this case. However, directly in the middle of the paragraph it says, if arrested as evidenced by the issuance of a uniform traffic ticket. And we know that Mr. Hayes was not under arrest because defense counsel asked Deputy Ash. And at the time that Mr. Hayes was asked to be transported by Chief Murray, he was not under arrest. Isn't that correct? Deputy Ash. That's correct. That's page T83. The state, also defense counsel, follows up with Deputy Ash about the citation. And again, on page 84, Deputy Ash says, no, we did not hand in the citation. But if he said that Mr. Manchin said that he believed he was unfree to leave, then he was under arrest regardless of what the officers believed. Right, Your Honor. And the state mentions that citation. I do not have it in front of me. It's a statute that basically says when you're in an accident, you have a duty to give your information, your personal information, and perhaps provide assistance at the scene when you're in an accident. Now, if Your Honors go out into the parking lot and have a fender bender, yes, you're required to be at the scene and give your information to the other driver. Does that mean you're under arrest or that there's probable cause to have you submit to drug testing? No. The state's making quite a reach with that statute. Next, whether a person feels free to leave is what we look to to see if someone is under arrest. Mr. Hayes must have felt free to leave because he did, in fact, leave after this chemical testing occurred. When Thoman spoke to him at the lobby of the county jail, he was in there by himself or possibly with his mother. He also left the jail after the testing occurred to go to a counseling session with his mother. Deputy Ash testifies on page T92 that he arrested Mr. Hayes solely on the basis of the drugs in his system. He also testifies on pages T89 and T90 that he had to call Mr. Hayes and have him returned to the jail to be arrested and was based on the results of this drug test. There is nothing that can say to be illegal drug testing in this case. This is a textbook violation of Mr. Hayes' tortument of rights. Next, as far as the argument regarding reasonable doubt, the state is now saying it's not asking for presumptions. However, that's all it has done with respect to this issue. During closing arguments, page T54, the state told the court, and I quote, we've got to presume that had he not had those drugs in there, that that caution would have been exercised. Young David would still be alive today. The state is relying on presumptions, and it did so at the trial court to get this conviction. And that is simply not enough. When the facts and the evidence were clear that this was an unavoidable accident, even the most attentive driver could not have avoided this collision. The facts of this case were tragic, and that is undeniable, but it does not justify the conviction against Mr. Hayes in this case. Do your honors have any questions? No, I don't think we do. Thank you both for your briefs and arguments, and I'll take the matter under advisement. Thank you.